UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UNITED STATES OF AMERICA

                - against -                               **MEMORANDUM AND ORDER**
                                                                              14-CR-450 (RRM)

ANGEL GALAN,

                       Defendant.
------------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

       In March 2017, defendant Angel Galan was convicted, following a jury trial before this Court, of being a felon in possession of a firearm or ammunition in violation of 18 U.S.C. § 922(g)(1).  Now, with slightly more than a year remaining on his 84-month sentence for that offense, Galan moves pursuant to 18 U.S.C. § 3582(c)(1)(A) for compassionate release from the Federal Correctional Institution in Gilmer, West Virginia ("FCI Gilmer"), claiming that he "will die" of complications relating to Covid-19 if he is not released early.  For the reasons explained below, Galan's motion is denied.

## BACKGROUND

       Although familiarity with this case is assumed, the Court will briefly recap its rationale for sentencing Galan to 84 months' imprisonment.  Galan's sentencing followed lengthy litigation concerning the applicability of the Armed Career Criminal Act.  On March 8, 2017, the Court determined that Galan was not an armed career criminal and, therefore, was not subject to the 15-year mandatory minimum sentence.

At sentencing on May 17, 2017, the Court calculated the guidelines range at 57 to 71 months. (S. 41.)¹ However, the Court upwardly departed from this range. The Court explained that Galan had four prior felony convictions, three of which involved handguns. (S. 61.) At age 18, he was convicted of gun possession and served one year. (S. 61.) At age 21, he was convicted of shooting someone following an altercation and was sentenced to an indeterminate term of 18 months to five years. (S. 61.) He was denied parole for that offense because he assaulted a corrections officer while in prison. (S. 61–62.) At age 30, Galan was convicted of a Hobbs Act robbery conspiracy involving the gunpoint robbery of a grocery store and was sentenced to 12 years in prison. (S. 62.) Galan had numerous disciplinary infractions while serving that sentence. (S. 62.)

Based on this criminal history, the Court concluded that Galan had "literally led a life of crime," engaging in "an unrelenting and decade long pursuit of criminal activity frequently involving violence undeterred by imprisonment and parole." (S. 62.) The Court noted that Galan had successfully completed a period of supervised release relating to his third felony conviction and that there was no report of disciplinary infractions at the MDC prior to trial. (S. 63.) However, the Court also noted that Galan demonstrated a tendency to revert to criminality when he was no longer under supervision. (S. 63.) The Court concluded that there was a very high risk of recidivism, and that a sentence of 84 months' imprisonment was necessary to deter and incapacitate Galan. (S. 63.)

<u>The Instant Motion</u>

On April 20, 2020, Galan, proceeding *pro se*, filed an emergency motion seeking compassionate release from FCI Gilmer on the ground that his life is endangered "due to eminent

---

¹ Numbers in parentheses preceded by "S." denote pages in the transcript of the May 17, 2017, sentencing proceeding.

2

(*sic*) Covid-19 infection." (Emergency Mot. (Doc. No. 153) at 1.)[2] Galan does not allege that anyone at FCI Gilmer has actually tested positive for Covid-19 but contends that inmates at the facility will be unable to practice social distancing and that this will thwart prison administrators' efforts to slow the virus when it inevitably enters the prison. (*Id.*) He speculates that FCI Gilmer will "not have the capability to provide needed assistance to all sick inmates when ... Covid-19 arrives in the next couple days to possible [*sic*] weeks." (*Id.*) Galan claims that he "will die" if he contracts the disease and alludes to "Medical records" and "Grievances for failures to provide Medical Attentions [*sic*] prior to this pandemic." (*Id.*)

Although Galan attaches a three-page handwritten letter and several exhibits to his motion, his submission includes no grievances and only a single medical record: a lab report indicating that Galan has high cholesterol. (Letter (Doc. No. 153-1) at 18.) His letter includes only a single paragraph relating to his health, in which Galan states that he will turn 52 years old on August 1, 2020; "is not in the best shape"; and is taking avorvastatin to treat his high cholesterol. (Id. at 3.) Most of the remainder of the letter and most of the exhibits pertain to his accomplishments while incarcerated: his successful completion of a vocational program, his excellent grades in college courses, and his good disciplinary record while incarcerated.

Characterizing himself as a "non-violent offender," who is among the "most vulnerable" inmates, Galan principally seeks his immediate release from FCI Gilmer. (Mot. at 2.) He also requests that the Court issue an order directing the facility to preserve "the video of the daily operations of the entire compound," and that the Court view this video *in camera*. (*Id.*) According to Galan, this video will demonstrate that FCI Gilmer has not properly implemented a social distancing policy, thereby placing all inmates at risk of "cross-contamination." (*Id.*)

---

[2] The page numbers refer to those assigned by the Court's Electronic Case Filing system.

3

Galan tacitly concedes that he has not exhausted his administrative remedies, alleging that it would be futile because the grievance process takes an average of six months to complete and asserting that "his death will come long before the exhaustion is done." (*Id.* at 1–2.)

The Government opposes Galan's motion on three grounds. First, the Government notes that Galan failed to exhaust his administrative remedies with the Bureau of Prisons ("BOP") or to petition the warden of FCI Gilmer for a sentence reduction, as required by 18 U.S.C. § 3582(c)(1)(A). Second, the Government argues that Galan has failed to show "extraordinary and compelling reasons" to justify his release more than a year prior to his current release date of September 3, 2021. Third, the Government contends that the 18 U.S.C. § 3553(a) factors weigh against releasing Galan, a career criminal with five felony convictions.

## DISCUSSION

I. <u>Applicable Law</u>

Galan motion for compassionate release is governed by 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018. Section 3582(c) provides that a district court "may not modify a term of imprisonment once it has been imposed except that … (1) in any case –

> (A) the court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Congress has never defined what constitutes "extraordinary and compelling reasons" for resentencing under Section 3582(c). *See United States v. Fernandez*, No. 12-CR-445 (JMF), 2020 WL 2731236, at *3 (S.D.N.Y. May 26, 2020) (recounting the history of this statute). Rather, Congress initially delegated the responsibility for outlining what could qualify as "extraordinary and compelling reasons" to the U.S. Sentencing Commission ("Commission"). *Id.*; *see* 28 U.S.C. 944(t) ("The Commission ... shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). Section 1B1.13 of the United States Sentencing Guidelines contains the policy statement issued by the Commission pertaining to the reduction of a sentence of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). This policy statement – which has not been amended since the enactment of the First Step Act on December 21, 2018 – states, in relevant part:

> Upon motion of the Director of the [BOP] under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

5

U.S.S.G. § 1B1.13. The Application Notes to section 1B1.13 clarify that "extraordinary and compelling reasons" exist in the following situations:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Application Notes to § 1B1.13 cmt. n.1.

A criminal defendant bears the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the

defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease"). "A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions." *United States v. Stevens*, No. 04-CR-222S, 2020 WL 2393306, at *2 (W.D.N.Y. May 12, 2020). "If the court finds, after consideration of the applicable 18 U.S.C. § 3553(a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute." *Id.*

II. Exhaustion of Administrative Remedies

As the Government correctly notes in its first argument, § 3582(c)(1)(A) provides that a court may not grant a defendant's motion for compassionate release unless the defendant has either fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or waited at least 30 days from the receipt of such a request by the warden of the defendant's facility. Galan does not allege that he has exhausted his administrative remedies or requested relief from the warden of FCI Gilmer. To the contrary, he implies that it would be futile to do so, alleging that grievance process takes an average of six months to complete and asserting that he will be dead "long before" his administrative remedies are exhausted. (Motion at 2.)

In light of Galan's failure to exhaust his administrative remedies or to petition the warden for his immediate release, the Court must address two questions. First, the Court must determine whether the exhaustion requirements of § 3582(c)(1)(A) are jurisdictional or whether the Court can consider the merits of Galan's motion absent compliance with the exhaustion requirements.

7

Second, the Court must determine whether the Court can excuse Galan's failure to exhaust his administrative remedies.

      A.  <u>The Exhaustion Requirements are not Jurisdictional</u>

The Supreme Court has explained that some statutory preconditions to suit are jurisdictional, while others merely create "claim-processing rules." *United States v. Monzon*, No. 99-CR-157 (DLC), 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)). When an exhaustion requirement is jurisdictional, courts are obligated to consider *sua sponte* whether that requirement has been met, even if – as in this case – the parties have not presented that issue. *See Gonzalez*, 565 U.S. at 141 (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)). Moreover, courts must generally consider jurisdictional questions first, before considering the merits of a case. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); *United States ex rel. Hanks v. United States*, 961 F.3d 131, 137 (2d Cir. 2020) ("There are a few recognized exceptions to the otherwise 'solid rule' that subject-matter jurisdiction must be decided first.")

The Second Circuit has not addressed whether the exhaustion requirements in § 3582(c)(1)(A) are jurisdictional. *See United States v. Kissi*, No. 13-CR-51 (MKB), 2020 WL 3723055, at *4 (E.D.N.Y. June 26, 2020); *United States v. Haney*, 19-CR-541 (JSR), 2020 WL 1821988, at *2 (S.D.N.Y. Apr. 13, 2020); *Monzon*, 2020 WL 550220, at *2. However, most of the district courts in this Circuit which have done so have held that the exhaustion requirement is not jurisdictional, but a claim-processing rule. *See, e.g.*, *United States v. Santibanez*, No. 13-CR-912 (RJS), 2020 WL 3642166, at *2 (S.D.N.Y. July 6, 2020); *Kissi*, 2020 WL 3723055, at *4; *United States v. Montanez*, No. 15-CR-122 (FPG), 2020 WL 2183093, at *3 (W.D.N.Y. May 5, 2020); *United States v. Bess*, No. 16-CR-156, 2020 WL 1940809, at *3 (W.D.N.Y. Apr. 22,

2020); *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *4 (S.D.N.Y. Apr. 19, 2020); *United States v. Russo*, No. 16-CR-441 (LJL), 2020 WL 1862294, at *4 (S.D.N.Y. Apr. 14, 2020); *Haney*, 2020 WL 1821988, at *2–3.  As some of these cases note, the Supreme Court has "adopted a 'readily administrable bright line' for determining whether to classify a statutory limitation as jurisdictional."  *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006)).  Under this bright line test, courts "inquire whether Congress has 'clearly state[d]' that the rule is jurisdictional; absent such a clear statement, ... 'courts should treat the restriction as nonjurisdictional in character.'"  *Id.* (quoting *Arbaugh*, 546 U.S. at 515–16).  Since Congress has not clearly stated that the exhaustion requirements in § 3582(c)(1)(A) are jurisdictional, the district courts have reasoned that they are non-jurisdictional claim-processing rules.  *See, e.g.*, *Kissi*, 2020 WL 3723055, at *4; *Scparta*, 2020 WL 1910481, at *4; *Russo*, 2020 WL 1862294, at *5.

      B.  <u>The Power of Courts to Excuse Non-compliance with Exhaustion Requirements</u>

"The fact that Section 3582(c)(1)(A) is a claim-processing rule, rather than a jurisdictional one, does not mean that the Court can ignore it."  *Russo*, 2020 WL 1862294, at *5.  "Claim-processing requirements are mandatory," though they "may be forfeited if not timely raised."  *Monzon*, 2020 WL 550220, at *2 (citing *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019)).  Since the First Step Act was enacted in late December 2019, dozens of district courts have grappled with the tricky question of whether and under what circumstances a court can excuse an inmate's failure to exhaust his or her administrative remedies.

Authority on this question is decidedly split.  Some courts in this Circuit have concluded that courts are precluded from excusing a defendant's failure to exhaust when, as here, that issue is properly raised by the Government.  *See, e.g.*, *Montanez*, 2020 WL 2183093, at *4; *United*

9

*States v. Hart*, No. 17-CR-248 (VSB), 2020 WL 1989299, at *4 (S.D.N.Y. Apr. 27, 2020); *United States v. Demaria*, No. 17-CR-569 (ER), 2020 WL 1888910, at *3 (S.D.N.Y. Apr. 16, 2020); *United States v. Rabadi*, No. 13-CR-353 (KMK), 2020 WL 1862640, at *3 (S.D.N.Y. Apr. 14, 2020); *United States v. Hernandez*, No. 19-CR-834 (PAE), 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020). Other courts have held that § 3582(c)(1)(A)'s exhaustion requirements, even if mandatory, may be excused. *United States v. El-Hanafi*, No. 10-CR-162 (KMW), 2020 WL 2538384, at *2–3 (S.D.N.Y. May 19, 2020); *Scparta*, 2020 WL 1910481, at *1; *United States v. Livingston*, No. 18-CR-416 (ENV), 2020 WL 1905202, at *1 (E.D.N.Y. Apr. 17, 2020); *Russo*, 2020 WL 1862294, at *4; *United States v. Smith*, No. 12-CR-133 (JFK), 2020 WL 1849748, at *4 (S.D.N.Y. Apr. 13, 2020); *Haney*, 2020 WL 1821988, at *3.

III.     The Merits of Galan's Motion

Since the administrative exhaustion requirement is not jurisdictional, the Court does not need to resolve this split of authority before reaching the merits of Galan's motion. Accordingly, the Court holds that even if it were to excuse Galan's failure to exhaust his administrative remedies, Galan has not demonstrated "extraordinary and compelling reasons" that would warrant the reduction of his sentence. First, Galan conceded in his motion papers that Covid-19 was not yet present at FCI Gilmer. Rather, he merely speculated that it was sure to arrive at the prison within "the next couple days to possible [*sic*] weeks," (Mot. at 1), and to spread unchecked throughout the inmate population due to FCI Gilmer's inability to maintain adequate social distancing and substandard medical care.

The Court's own independent research substantiates Galan's suspicions that Covid-19 would soon arrive at FCI Gilmer. One inmate tested positive for Covid-19 on May 1, 2019 – less than two weeks after Galan filed his motion – and four others tested positive within two weeks

10

thereafter.  Https://wvmetronews.com/2020/05/12/bureau-of-prisons-reports-additional-covid-19-cases-at-gilmer-prison.  However, there is no evidence to substantiate Galan's assumption that the novel coronavirus would spread widely through the prison once it arrived.  To the contrary, BOP statistics state that only six inmates contracted Covid-19 and that all six had recovered as of July 24, 2020.  *See* https://www.bop.gov/coronavirus.

Second, although Galan claims that he "will die" if he contracts Covid-19, he has not provided evidence to suggest that he is at particularly high risk of dying from the disease.  His motion papers establish that he has high cholesterol, which is being treated with avorvastatin, and that he will be 52 years old on August 1, 2020.  However, high cholesterol is not among the comorbidities which place one at an increased risk for severe illness from Covid-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited 7/23/2020).  Moreover, while the risk of death from Covid-19 increases with age, 8 in 10 of those dying from the disease are 65 or older – 13 years older than Galan.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

In addition, consideration of the § 3553(a) factors militate against Galan's early release.  Although Galan claims that he is a "non-violent" offender, the crime for which he is currently incarcerated is his fifth felony offense, and his fourth involving a firearm.  Although he did not qualify as a "armed career criminal," the Court noted at sentencing that he had "literally led a life of crime," engaging in "an unrelenting and decade long pursuit of criminal activity frequently involving violence undeterred by imprisonment and parole."  (S. 62.)  Accordingly, the Court upwardly departed from the guidelines range, noting that an above-guidelines range was necessary to deter and incapacitate Galan.  (S. 63.).

11

Galan's representations that he has been a model prisoner and performed well academically while incarcerated do not convince the Court that the need for deterrence and incapacitation has diminished. As the Court noted at sentencing, Galan successfully completed a period of supervised release following his third felony conviction and did not commit any disciplinary infractions while housed at the MDC prior to trial. (S. 63.) Nonetheless, the Court held that an above-guidelines sentence was appropriate because Galan had a tendency to revert to criminality when he was no longer under supervision. (S. 63.) Accordingly, although the Court is pleased to hear of Galan's accomplishments, it is not persuaded that they justify his early release.

## CONCLUSION

For the reasons set forth above, Galan's emergency motion for compassionate release is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
      July 23, 2020

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge